## 28721. YOUNG v. THE STATE.

INGRAM, Justice.

The appellant was indicted and tried in the Superior Court of Gwinnett County on a charge of murder for the shooting of his daughter, Evona. He was found guilty and sentenced to life imprisonment. His motion for new trial was denied by the trial court and this appeal was brought for review of several enumerated trial errors.

The evidence presented by the state showed that appellant lived with his wife and four children. The appellant's daughter, Evona, had become pregnant, and on Saturday, the day before the shooting occurred, appellant, his wife and Evona visited a hospital to allow Evona to be examined by a physician. During this trip, appellant was noticeably angry because of the cost of Evona's pregnancy examination and expressed his ire both to Evona and his wife. On that evening, and continuing the following morning, appellant steadily indulged in alcoholic beverage so that by Sunday afternoon he was described as "drunk" by police officers. At some time on Sunday, appellant told his wife and Evona to "get out" of his house, and, in addition, told his son, Rickey, that he was going "to kill Biddy (his wife) and Evona (daughter) before you come back again." That afternoon while his wife was cooking in the kitchen, and while Evona was packing her clothes in preparation for leaving the residence, appellant, using his own gun, shot and killed Evona. His wife testified that appellant first

pulled the trigger and the gun did not fire, whereupon he again pulled the trigger, this time sending the fatal shot along its way. She also testified that appellant was in the bedroom when the incident occurred. After Evona was dead, appellant ran from the house crying, "I have shot my baby," and was soon after apprehended by the police, apparently without resistance. After he had been informed of his constitutional rights, appellant repeatedly told the officers: "I've shot my baby." The police after a thorough search, found the killing bullet and the ballistics test indicated that it was fired from appellant's gun, which also was found in the residence.

Appellant's testimony contradicted most of the state's theory of the case. He admitted shooting his daughter, but maintained it was purely accidental and occurred while he was sitting at the kitchen table cleaning his gun. He also testified that his relations with both his deceased daughter, as well as the rest of his family, were pleasant, loving and amicable.

Appellant's first enumeration of error asserts that the trial court should have sustained his challenge to both the grand and petit jurors on the ground that negroes and persons between the ages of 18 and 21 were systematically excluded from the jury list. See Peters v. Kiff, 407 U. S. 493 (92 SC 2163, 33 LE2d 83) (1972). The record reveals that appellant voiced this objection for the first time in his motion for a new trial. The procedure in this state has long required a criminal defendant to raise a challenge to the jury lists at the time the jury is "put upon him" or else he waives his right to object. See *Williams v. State,* 210 Ga. 665, 667 (82 SE2d 217) (1954); *Hill v. Stynchcombe,* 225 Ga. 122, 127 (166 SE2d 729) (1969). The legal policy upon which this salutary rule rests is that an accused cannot sit back and gamble upon the verdict and then, if dissatisfied, complain of the jury's selection process for the first time after he has been convicted. Appellant waited too late to complain of the jury composition in this case, and, even then, offered no evidence in support of the contention. See also *Williams v. State,* 232 Ga. 203.

During the trial of the case, appellant's wife testified as a witness both for the prosecution and the defense.

Appellant contends that this was error as the record fails to show that his wife was informed of her right not to testify against him in a criminal proceeding as provided by Code Ann. § 38-1604. There is no merit in this argument since the privilege provided by Code Ann. § 38-1604 belongs to the spouse whose testimony is sought to be elicited, rather than the spouse who is on trial. See *James v. State,* 223 Ga. 677, 683 (157 SE2d 471) (1967); and, *Kellar v. State,* 226 Ga. 432 (1) (175 SE2d 654) (1970). The policy of Code Ann. § 38-1604 is not to offer protection to the defendant, but to give regard to feelings of family harmony and promote marital unity. As stated in *Kellar,* supra, "Where the witness voluntarily took the stand and testified, it will be presumed that she did so pursuant to a waiver of her privilege."

In three separate enumerations of error, appellant urges that his right to a thorough and sifting cross examination was abridged by the trial court. In one instance, appellant's counsel was cross examining appellant's wife, and asked her to relate whether she and appellant ever had disputes during their 30-year marriage. Upon objection from the prosecution, the trial judge limited the scope of the question to a reasonable period prior to the time appellant's daughter was shot. In a second instance, Detective Blannott was asked a series of questions which were designed to cast doubt on his conclusion that appellant was drunk at the time of his arrest. The trial judge, upon his own motion, directed appellant's counsel to move on as the detective had already given both his conclusion and the facts upon which it was based. These situations called for the exercise of the trial judge's discretion in limiting cross examination to relevant issues and in controlling repetitive questions. The right to a thorough cross examination is not unlimited, and we find no abuse of discretion in these rulings. See *Hunsinger v. State,* 225 Ga. 426, 428 (169 SE2d 286) (1969). In the third instance, which appellant cites as error, his counsel asked appellant's son on cross examination: "Now, have you started receiving any money since your father got charged with this offense?" Upon objection the court asked: "Would that be relevant to any issue in this case?"

Whereupon appellant's counsel replied: "Possibly not, your Honor . . . I thought it might have a bearing on the motive of the testimony." The court then said: "Well, if you can prove any motive, that would be one thing, but motive has to be in existence prior to the act, I don't think what happened this [sic] would have any bearing on this case." Following this colloquy, appellant's counsel said: "All right, your Honor," and proceeded on a new line of questioning. Although appellant's attorney explained that the testimony was aimed against the witness' credibility, no offer was made to show how the testimony would be relevant to that issue, or what answer was expected to be given. The relevancy of the question was not intrinsically apparent, and appellant has failed to show how his cause was prejudiced by the exclusion of this evidence. We, therefore, find no reversible error in this circumstance. *Kapplin v. Seiden,* 109 Ga. App. 586 (4) (137 SE2d 55) (1964).

During the testimony of the state's witness, Detective Blannott, there was admitted into evidence, over objection, a diagram of appellant's residence which the prosecution used to show the spacial relationships involved in the state's version of the slaying. Appellant contends on this appeal the diagram was submitted without proper foundation. We cannot agree with appellant as Detective Blannott testified from his personal knowledge that the diagram fairly and accurately represented appellant's residence.

In connection with this same diagram, the prosecution introduced as a witness Mr. Nolan Wallace, who drew the diagram after having personally measured the dimensions of the Young residence. Appellant objected to this witness on the ground that he was not on the list of state's witnesses given to appellant, and he urges this same argument on appeal. The record shows this witness was called solely to rebut appellant's contention that the diagram was not an accurate and fair representation of appellant's residence. In addition, the state's attorney stated that he had not intended to call Mr. Wallace until after appellant's cross examination of Detective Blannott. This enumeration of error, therefore, is without merit. *Yeomans v. State,* 229 Ga. 488 (2) (192

SE2d 362) (1972).

At one point during the prosecution's case, Bernard House, an employee of a funeral home, and an embalmer for nearly five years, testified that the victim "had been shot." Appellant objected that Mr. House was not qualified as an expert to give such a conclusion, but the trial judge overruled the objection saying that Mr. House's five years experience as an embalmer qualified him to recognize a gunshot wound. This ruling is complained of in this appeal, but we must agree with the trial court. This testimony was clearly admissible under the ruling stated in *Wilson v. State,* 215 Ga. 446 (3) (111 SE2d 32).

Appellant also enumerates as error the admission into evidence of several photographs depicting the deceased victim. He argues that he had stipulated her death and that the photographs were introduced solely to inflame the minds of the jurors. There is no merit in this argument. The nature and location of the wounds inflicted upon the deceased, as well as her location within the Young residence at the time of her death, were significant questions in the case for the jury. Appellant contended that he was sitting at the kitchen table within his residence when the fatal shot was accidentally discharged, while the state offered evidence tending to show that appellant was in the bedroom at the time of the shooting. Accordingly, the photographs were relevant and admissible. See *Johnson v. State,* 226 Ga. 511, 512 (2) (175 SE2d 840) (1970).

Appellant also appeals from the admission into evidence of the bullet which the state contended was the cause of death. Appellant argues that it was not sufficiently identified. However, appellant did not object at the time the projectile was admitted and there is, consequently, nothing for this court to review. See *Meeks v. Meeks,* 209 Ga. 588, 589 (74 SE2d 861) (1953). Moreover, a review of the record shows that the chain of custody of the bullet was complete from Detective Blannott to Mr. Malcolm Davis of the State Crime Laboratory who brought it to court. No error appears here.

During the presentation of appellant's defense, his counsel called Mr. Earnest Cheek, whose testimony

related solely to appellant's reputation in the community. When Mr. Cheek was first called, the following conversation took place: "Mr. Sunderland: Defense will call Mr. Ernest Cheek. A juror: He became ill and had to go home. The Court: You said he became ill and had to go back home? Mr. Vandeford: He's in the back back there. The Court: Well, all right, call in the witness." On this appeal, appellant argues for the first time that this shows the existence of an improper and prejudicial connection between Mr. Cheek and the juror which would require the granting of a new trial. The burden of showing error is upon the appellant. See *Roach v. State,* 221 Ga. 783 (4) (147 SE2d 299) (1966). We cannot find error in support of appellant's position here. There was no motion for a mistrial made at the time. Mr. Cheek, as it turned out, knew nothing of appellant's reputation and was allowed to step down after saying so. In addition, the record is equally consistent with the hypothesis that the juror simply misunderstood the name that was called. In such circumstances, appellant has not carried his burden of showing reversible error.

Two separate statements by the trial judge are also asserted to be error by the appellant. In one instance, the judge, in correcting appellant's counsel as to the form of his question to a witness, said: "If Mr. Vandeford (co-counsel for appellant) suggested that question, Mr. Vandeford knows better than that." In a second instance, after appellant's attorney asked for a recess, the judge pointed out that a recess had been taken shortly before, and said: "We owe it to the jury and we owe it to the county to proceed with the trial." Appellant urges that both of these statements were prejudicial to his cause. We conclude, however, that these statements were not so damaging as to require that a new trial be granted.

The trial judge charged the jury on the law pertaining to murder and to accident. He did not give the appellant's requested charges on manslaughter, and the failure to do so is enumerated as error. The evidence, however, does not reveal any provocation that would support the theory of manslaughter. Appellant himself testified that he never argued with his daughter, the deceased, and that the shooting was purely accidental,

occurring when the gun fell out of his hands. The state's evidence, on the other hand, indicated that appellant did argue with both his wife and daughter, but nothing approaching sufficient provocation to establish manslaughter was revealed. Code Ann. § 26-1102. As a result, we find no error in these enumerations. See *Williams v. State*, 232 Ga. 203, supra.

In his motion for a new trial and in his brief on appeal, appellant urges that a new trial is required because the special prosecutor in this case was an associate of appellant's first appointed counsel, and therefore was improperly privy to facts which he otherwise would not have known. This argument, while persuasive in itself, does not emerge from the record. It was not raised before or during the trial of the case. As a result, we have no ruling to review, and no evidence upon which a review can be based. This enumeration, therefore, is without merit.

Appellant's final enumerations of error are upon general grounds relating to the sufficiency of the evidence. The transcript of evidence in this case shows the verdict is supported by the evidence and that the jury was authorized under the evidence to find the appellant guilty of murder.

*Judgment affirmed. All the Justices concur.*

SUBMITTED MARCH 12, 1974 — DECIDED MAY 21, 1974.

*Thomas S. Sunderland, Darryl R. Vandeford,* for appellant.

*Bryant Huff, District Attorney, Gary Davis, Dawson Jackson, Arthur K. Bolton, Attorney General, William F. Bartee, Jr., Assistant Attorney General, G. Stephen Parker, Deputy Assistant Attorney General,* for appellee.