Tom DIXON, Petitioner,

v.

Joseph S. HOPPER, Warden, Georgia State Prison, Respondent.

Civ. A. No. 75–6–Alb.

United States District Court,
M. D. Georgia,
Albany Division.

Jan. 7, 1976.

Roger Mills, Jones, Cork, Miller & Benton, Macon, Ga., for petitioner.

G. Stephen Parker, Atlanta, Ga., for respondent.

OWENS, District Judge:

Petitioner Tom Dixon here asserts that he was unconstitutionally convicted and sentenced on a charge of armed robbery to 20 years imprisonment by a jury in the Superior Court of Dougherty County, Georgia. Based on an evidentiary hearing, record evidence in this case and in *Dixon v. Georgia,* Civil No. 1178 (M.D.Ga. June 5, 1972, *rev'd sub nom. Dixon v. Caldwell,* 471 F.2d 767 (5th Cir. 1973), and the findings of this court in *Thompson v. Sheppard,* Civil No. 1224 (M.D.Ga. Jan. 12, 1973), *aff'd* 490 F.2d 830 (5th Cir. 1974), *cert. denied,* 420 U.S. 984, 95 S.Ct. 1415, 43 L.Ed.2d 666 (1975),

the court finds his conviction to be unconstitutional for several reasons. *First,* there is a total absence of evidence establishing that petitioner committed the offense of armed robbery. *Second,* the trial court's charge to the jury on the alibi defense raised by petitioner unconstitutionally shifted the burden of proof to him. *Third,* identification testimony of the alleged victim, irreparably tainted by prior suggestive procedures, was improperly admitted into evidence at the trial. *Fourth,* petitioner did not receive adequate representation by trial counsel. *Fifth* and finally, the grand and petit juries were unconstitutionally, discriminatorily constituted in that blacks and women were not properly represented on them. In view of the disposition of these claims in petitioner's favor, the court need not consider whether he is entitled to relief on other claims: unconstitutional police interrogation, lack of evidence before the grand jury, indictment and trial on a charge different from that for which he was arrested, ineffective assistance of appellate counsel, and punishment so severe in length that it is cruel and unusual.

Petitioner's difficulties began on the evening of December 26, 1969, when one Mario Martinez was beaten and robbed of a broken watch, $30.00, and other items from his wallet in the bathroom of a bus station in Albany, Dougherty County, Georgia. After treatment for his wounds, the victim was taken to the police station where he looked through a book of mug shots. Upon finding a photograph of Dixon, he said it "looked like" his assailant. This belief was immediately confirmed by the police officer's statement, "Yes, that's him." (Record, Respondent's Exhibit 1 at 34–35, *State v. Dixon,* Case No. 15274, Dougherty County Superior Court, January 20, 1970 [hereinafter cited as R.]). Petitioner that same night was arrested and placed alone in a room at the police station from where, through a two way mirror, he was identified by the victim as the perpetrator. No "lineup" was used.

On January 2, 1970, a committal hearing was held to determine if probable cause existed for petitioner's continued detention. Without the presence of counsel for petitioner (R. 101–102), the judicial officer found such cause and bound petitioner over to the Superior Court on a robbery charge. (Record on appeal in *Dixon v. Georgia,* Civil No. 1178, *supra* at 130 [hereinafter cited as R.App.]). On January 14, 1970, the grand jury indicted petitioner on a charge of armed robbery, a capital offense. (R.App. 127). Dougherty County's procedures for selecting grand and petit juries were found constitutionally infirm less than three years later in *Thompson v. Sheppard,* Civil No. 1224 (M.D.Ga. Jan. 12, 1973), *aff'd* 490 F.2d 830 (5th Cir. 1974), *cert. denied,* 420 U.S. 984, 95 S.Ct. 1415, 43 L.Ed.2d 666 (1975), because blacks and women were discriminatorily excluded. In that litigation it was established that the jury commissioners selected persons for jury duty based on the commissioner's personal knowledge of the prospective juror, or the prospective juror's presence on a previous jury list. As a result, at a time when 55 percent of the county's citizens were female and 30 percent were black, the jury lists contained a grossly disproportionate number of blacks and females—the grand jury composition was about 17 percent female and 13 percent black while the petit jury was roughly 24 percent female and 13 percent black. *Id.* at 3. Because the identical procedures existed when petitioner was indicted and convicted (Affidavit of Wendell Prince, Nov. 11, 1975), the petitioner was indicted and convicted by unconstitutionally composed juries. Neither petitioner nor his trial counsel objected to the composition of these juries, although petitioner to no avail did complain to his trial counsel that a particular petit juror was prejudiced against him.

At the trial, evidence identifying petitioner as Martinez' attacker came from three sources. First, Martinez testified that he had had a momentary conversation in the bathroom with the person who then beat and robbed him; he identified this person in court as Dixon. Second, Charles Williams, an employee

at the station, testified that he saw Dixon attacking the victim when he entered the bathroom to investigate the disturbance and glanced around a corner before being frightened away. The third source of identification was Williams' testimony that another individual, Ned Lee Smith, told police that one assailant was Dixon. (R. 62). Smith did not testify, and no objection was made to this hearsay testimony.

The victim testified positively that he did not see a gun, was not aware of the presence of any weapon (R. 15, 23), and did not hear any threats about the use of a weapon. (R. 45–46). Williams, the station employee, testified that the co-defendant of petitioner pointed a gun at him to make him leave when he entered the bathroom to investigate. (R. 52–53). At the close of the state's case, no motion was made for a directed verdict on the theory that the evidence did not authorize a conviction for an armed robbery because of the lack of evidence of an essential element of that crime, the statutory requirement that property be taken from the victim "by use of an offensive weapon." Ga.Code Ann. § 26–1902.

Dixon testified in his own behalf that he was at a place called Dye's lounge during the time the crime allegedly took place. On cross-examination, he testified that a Rufus Jones and the bartender knew he was there but neither of these potential witnesses testified for petitioner, and his counsel does not recall having obtained these names for petitioner or discussing the case with potential alibi witnesses.

After a charge discussed in more detail below and objected to by counsel for petitioner's co-defendant on only one ground not material here, the jury returned a verdict of guilty against petitioner and his co-defendant and, under the sentencing procedure then in effect, simultaneously imposed punishment of 20 years in prison for both. This became the judgment of the court on January 23, 1970.

Petitioner did not appeal. In 1971, however, he filed the first of many post-conviction petitions. In the Tattnall County (Georgia) Superior Court he alleged that he had not been advised by trial counsel of his right to appeal and that he had been denied a transcript of his trial proceedings. He also asserted that his trial counsel had not properly represented him because, *inter alia,* counsel did not challenge the petit jurors despite petitioner's statement to him that one of the jurors was prejudiced against him. The habeas court's denial of relief, *Dixon v. Caldwell,* Habeas Corpus No. 5343 (Tattnall County Superior Court September 15, 1971) (R.App. 163), was affirmed by the Supreme Court of Georgia, *Dixon v. Caldwell,* 228 Ga. 658, 187 S.E.2d 292 (1972). Both courts found that no evidence had been produced by petitioner to support his allegations.

Petitioner's next effort came in this court which likewise denied relief. *Dixon v. Georgia,* Civil No. 1178, *supra.* This determination was reversed by the Fifth Circuit in *Dixon v. Caldwell,* 471 F.2d 767 (5th Cir. 1973), which held:

"The district court should conduct an evidentiary hearing to determine if petitioner's claims that he was not effectively represented by counsel on appeal and that he was denied the use of a free transcript of his state court trial for the purposes of appeal are true. . . . [t]he court below should also investigate any other habeas claims raised by the petitioner." *Id.* at 771.

Pursuant to this mandate, this court on April 5, 1973, ordered that an out of time appeal be allowed or that petitioner be released. *Dixon v. Caldwell,* Civil No. 1178 (M.D.Ga. April 5, 1973). Petitioner was granted such an appeal and counsel for him was appointed by the state. In that proceeding, without consulting petitioner, counsel asserted, *inter alia,* that the use of suggestive identification procedures made Martinez' in court identification inadmissible and that the trial court erred in refusing to exclude hearsay identification evidence. The Su-

preme Court of Georgia affirmed. *Dixon v. State,* 231 Ga. 33, 200 S.E.2d 138 (1973). The court rejected the contention that the identification procedures were defective and refused to consider the hearsay identification issue because that question had not been raised at trial. Counsel in that appeal did not argue the constitutionality of the charge on the alibi defense, the improper composition of the grand and petit juries, the lack of counsel at the committal hearing, or the argument that armed robbery is not committed when the victim is unaware of a weapon and the weapon is not directed toward the victim. Moreover, despite the fact that appellate counsel argued that certain defects were so egregious that the trial court erred in failing to correct them *sua sponte,* Enumeration of Errors, Respondent's Exhibit 3, no argument was advanced that trial counsel rendered ineffective assistance.

Petitioner returned to Tattnall County Superior Court in July 1974, asserting, *inter alia,* that the alibi charge was illegal and that he was denied effective assistance of trial and appellate counsel. Pursuant to Ga.Code Ann. § 50–127(10), that court dismissed his petition as successive, finding that he could have raised the allegations it contained in his prior state habeas corpus action or on appeal. *Dixon v. Hopper,* Habeas Corpus No. 74–180 (Tattnall County Superior Court October 7, 1974), Respondent's Exhibit 6. No appeal from this decision was taken by petitioner.

Instead, petitioner filed this action. On April 11, 1975, this court gave the state 90 days to move to amend the second habeas dismissal so that the Tattnall court might make findings of fact on petitioner's allegations. The state having declined to do so, this court held a full evidentiary hearing, after which both sides supplemented the record. On the basis of all the information available to it from the litigation mentioned above, the court finds that petitioner is entitled to federal habeas corpus relief for the reasons discussed below.

As an initial matter, the court notes that petitioner has exhausted state habeas remedies as required by 28 U.S.C. § 2254(b) with respect to any alleged violation of his constitutional rights which he chooses to assert in this court. Most of his major contentions—ineffective assistance of trial and appellate counsel, cruel and unusual punishment, unconstitutional interrogation and identification procedures, the improper admission of hearsay evidence, and the unconstitutionality of the alibi charge—have been presented to the state courts. However, other alleged denials of constitutional rights, such as the illegal composition of the juries, the lack of counsel at the committal hearing, and the lack of evidence showing the commission of the offense of armed robbery, have not been directly submitted to the Georgia courts, nor have some of the more untenable grounds petitioner has raised. Nevertheless, exhaustion as required by the statute on all claims has occurred in this instance.

The respondent's decision not to move to amend the dismissal of petitioner's state habeas petition effectively denies state procedures to petitioner. In such a reopened proceeding, petitioner would have been free to raise any of the claims he makes here. That avenue having been blocked by respondent's decision, petitioner faces "an absence of available State corrective process", 28 U.S.C. § 2254(b), and can freely seek federal relief. Similarly, if petitioner were remanded to file another state habeas petition on his own initiative, the state court would likely dismiss it as successive under Ga.Code Ann. § 50–127(10), as it has already done once in this case. Prisoners seeking federal relief are not required to seek state relief when such efforts would be futile. *Layton v. Carson,* 479 F.2d 1275 (5th Cir. 1973); *Matthews v. Wingo,* 474 F.2d 1266 (6th Cir.), *cert. denied,* 411 U.S. 985, 93 S.Ct. 2283, 36 L.Ed.2d 963 (1973). Finally, because the state courts have had three opportunities to review petitioner's case, the policy of avoiding piecemeal litigation would best be served

by this court now proceeding to consider and finally determine petitioner's entire case. After being extensively shuttled between state and federal forums, petitioner should not be required to remain a "helpless pea" in a procedural shell game when he is obviously entitled to relief. Given the respondent's failure to seek to proceed in the state court and the likely refusal of that tribunal to hear petitioner's claims, this court can properly grant any federal relief to which petitioner is entitled, whether or not the grounds for it have been raised in the state courts.

The most glaring defect in petitioner's conviction is the total lack of evidence of his commission of the offense of armed robbery. In *Garner v. Louisiana,* 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961), blacks who had engaged in a peaceful demonstration were convicted for disturbing the peace and complained that they had been denied due process because the evidence did not authorize such a conviction. The Supreme Court explained that a challenge on these grounds

". . . does not turn on a question of sufficiency of evidence to support a conviction, but on whether these convictions rest upon any evidence which would support a finding that the petitioners' acts caused a disturbance of the peace. In addition, we cannot be concerned with whether the evidence proves the commission of some other crime, for it is as much a denial of due process to send an accused to prison following conviction for a charge that was never made as it is to convict him upon a charge for which there is no evidence to support that conviction." 368 U.S. at 163–164, 82 S.Ct. 248, 252, 7 L.Ed.2d at 213–214.

Turning to the statute under which the petitioners were convicted, the Court found that the Louisiana courts had interpreted it as encompassing only violent or boisterous conduct or activity that induces a foreseeable physical disturbance. *Id.* at 166–67, 82 S.Ct. 248, 7 L.Ed.2d at 215. Finding no evidence that petitioners had engaged in such conduct, the

Court held that the convictions violated the petitioners' rights to due process of law.

■ In the instant case, Dixon was charged with armed robbery and was found guilty. That crime as defined under Georgia law obviously contemplates that an offensive weapon be used against the person from whom property is taken:

"A person commits armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon." Ga.Code Ann. § 26–1902.

Interpreting this statute, the Supreme Court of Georgia in *Hicks v. State,* 232 Ga. 393, 403, 207 S.E.2d 30 (1974), reversed a conviction for armed robbery where the victim was asleep when her property was taken despite the fact that the perpetrator had a gun at that time and threatened her with it when she awoke shortly thereafter. In petitioner's case, the victim Martinez admitted several times that he was unaware of the presence of the pistol. Although a gun was present and used to threaten another, then, it was not used to take the victim's property as required under the Georgia law of armed robbery and armed robbery has simply not occurred in this instance.

■ Armed robbery does include lesser offenses for which there may be evidence. Nevertheless, petitioner was not charged with any other crime, the charge to the jury did not adequately instruct on the elements of such lesser included offenses, and in any event, the jury's general verdict of guilty must be construed as finding the defendants guilty of the gravest possible offense, armed robbery, therefore requiring that there be evidence of armed robbery. *See Simmons v. State,* 220 Ga. 881, 142 S.E.2d 798 (1965). The inescapable conclusion is that petitioner stands convicted of an offense for which there is no evidence and that he was neither charged nor convicted of any offense for which

there is evidence. His conviction therefore violates due process and cannot stand.

A second constitutional infirmity in petitioner's conviction is a portion of the charge to the jury on his alibi defense. Although a convicted prisoner in general cannot complain of improper jury charges in a federal habeas corpus court, *Smith v. Smith*, 454 F.2d 572 (5th Cir. 1971) demonstrates that he can collaterally attack a state conviction where the judge gave an alibi charge which shifts to the defendant the burden of disproving an essential element of the crime—his presence. In petitioner's trial, the judge charged:

> "Alibi as a defense involves the impossibility of the Defendant's presence at the scene of the alleged offense at the time of the alleged commission and range and evidence of showing [sic]. In respect to time and place, it must be such as would reasonably exclude the possibility of the presence." (R. 128).

In addition to being confusing, the charge clearly suggests that the defendant must produce evidence that "would reasonably exclude the possibility of the presence." This difficulty was compounded when the judge further explained:

> "If, from a consideration of the evidence or from a lack of the evidence or from the evidence and the statement of the Defendant or from the statement of the Defendant alone, you believe these contentions of the Defendant to be the truth of the case or if you believe any one of the contentions of the defendants to be the truth of the case, then it would be your duty to acquit them. . . ." (R. 130).

This portion suggests to the jury that they must believe the defendant's evidence before they can acquit, again placing the burden on the defendant to prove innocence by excluding presence. The general charge on reasonable doubt and the state's burden of proof (R. 124–25) is insufficient to overcome the constitutional problems in these more detailed and specific instructions. Furthermore, it might be noted that nowhere did the judge instruct the jury as to the form of their verdict if they found the state's case unconvincing beyond a reasonable doubt although he did illustrate how their verdict was to read if they fixed punishment at death, life, a fixed number of years, or acquitted if they believed the alibi. This failure to specify a form for a verdict based on a finding that the state had not carried its burden may have suggested to the jury that the only way to acquit was to accept the defendant's alibi position.

The alibi charge here is not identical to the one disapproved in *Smith v. Smith, supra*, and may be less offensive to constitutional requirements than the one in that case. Nevertheless, as the *Smith* court noted, "it is enough to say that it is clear that Georgia defendants have *some* burden on their alibi defense." 454 F.2d at 578. Petitioner, having been convicted on an unconstitutional charge in a trial after December 16, 1968, therefore, is entitled to federal habeas relief. *See Bassett v. Smith*, 464 F.2d 347 (5th Cir. 1972), *cert. denied*, 410 U.S. 991, 93 S.Ct. 1509, 36 L.Ed.2d 190 (1973).

Another defect in petitioner's conviction involves the suspect identification procedures employed. Although petitioner cannot complain that he was denied counsel at the pre-indictment identification, *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), he can assert that the pre-trial identification procedures employed by the police were so suggestive that the subsequent in-court identification of petitioner by the victim should have been excluded. The constitutional difficulties with the procedure used here are two. First, after the victim stated at the police station that a photo of Dixon "looked like" his perpetrator, the police said, "Yes, that's him." (R. 35). Thus, official confirmation was given to a rather tentative identification. Second, compounding this

perhaps excusable suggestive influence, petitioner was shown to the victim through a two way mirror in a one man showup; such a procedure obviously expects and is intended to result in the victim's agreement with the previous official decision that the exhibited individual is the criminal.

■ In determining whether pre-trial procedures have been so suggestive that in court identification should be excluded, the central question is whether "under the 'totality of circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972); *accord, e. g., Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

■ The key concern has been expressed in *Neil v. Biggers, supra* :

"Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." 409 U.S. at 198, 93 S.Ct. at 375, 34 L.Ed.2d at 411.

In that case, the accused complained that the rape victim's in court identification was tainted because she had identified him in a one man showup some seven months after the alleged incident. The Court refused to find this impermissible in view of other surrounding circumstances: she had seen him for about 30 minutes under adequate light, faced him directly, given a fairly accurate description to the police shortly after the attack, and had previously failed to identify numerous other suspects who had been presented to her under similar circumstances, thus indicating her reliability. Finally, upon the trial she expressed

no doubt about the identification she had given.

In other cases, exigent circumstances such as the need for prompt identification and apprehension of the perpetrator, *Simmons v. United States, supra*, or the possibility of the victim's death or inability to attend a lineup, *Stovall v. Denno, supra*, have justified less than perfect identification procedures. The lack of verbal suggestion by investigative officers has also been noted in approving in court identification after otherwise suspect identification procedures. *E. g., Coleman v. Alabama, supra* ; *Simmons v. United States, supra*.

■ In marked contrast, none of those factors are present here. Although having the victim look through mug shots was clearly appropriate due to the need to apprehend the criminal, the confirmation of the victim's tentative choice just as clearly was not. Further, once the accused was in custody no reason, and clearly no exigent circumstances, existed for utilizing a one man procedure rather than a lineup. The one man showup, constitutionally suspect whenever utilized, is particularly inappropriate when it is employed after the victim, on the basis of a photograph, has given only an uncertain identification which was confirmed unnecessarily by police; the effect of the initial suggestion is magnified and the chances of misidentification compounded. Finally, police did offer verbal suggestion to the victim. The situation here recalls language from *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), where the defendant was positively identified only at a second lineup after the witness had previously been unable to identify him at the first lineup and a one man showup: "In effect, the police repeatedly said to the witness, 'This is the man.'" *Id.* at 443, 89 S.Ct. 1127, 22 L.Ed.2d at 407. In *Dixon's* case, the police *actually* said "That's him." This is certainly the sort of gratuitous aid to misidentification which *Neil v. Biggers, supra*, condemns.

■ This impermissibly suggestive procedure was likely to irrevocably commit the witness to the desired identification and was thus conducive to irreparable misidentification. The victim saw his attacker in a bus station bathroom for only a few moments and, although they had a brief conversation, the victim did not have the opportunity to view him for an extended period of time. Moreover, the victim had no particular reason to remember the appearance of this casual stranger who did not assume any real importance as a threat to him until the stranger could no longer be seen. Unlike the rape victim or bank teller confronted by a robber, there was no reason for the victim to pay any particular attention to the person who, when seen by the victim, was merely sharing bathroom facilities. In addition, no indication appears at trial or anywhere else that the victim was positive that Dixon was his assailant; indeed, if an almost contemporaneous identification is merely that the picture "looked like" Dixon, the certainty of identification must diminish—unless impermissible suggestion has operated to strengthen the recollection. Under these circumstances, therefore, it cannot fairly be said that the victim's identification in court was untainted by the previous procedures. The obviously prejudicial admission of the in court identification was therefore error of constitutional magnitude and requires that the conviction be ruled illegal.

■ Petitioner has also been denied his sixth amendment right to counsel. As set forth in cases such as *Herring v. Estelle*, 491 F.2d 125 (5th Cir. 1974), a defendant is entitled to "reasonably effective assistance" of a lawyer who is familiar with the law and facts of his case.

■ The state bears the initial responsibility for insuring that indigents receive representation which meets this standard and to that end must make a timely appointment of counsel to give the lawyer enough time to prepare his case properly. In this instance the state neglected this duty by failing to appoint counsel to represent petitioner at his committal hearing. This deprived counsel of the opportunity to learn at least part of the state's case against his client, burdening counsel at the outset with a severe disadvantage. The detriment petitioner suffered from the lack of counsel at this stage was evident at trial. For example, petitioner testified that Charles Williams—the employee who identified Dixon as being in the bathroom—had said at the committal hearing that he had not seen Dixon. Denied the opportunity of attending the committal hearing and thereby the ability to learn the circumstances surrounding this testimony, petitioner's counsel could not be expected to use this discrepancy to impeach this witness as he otherwise could have. Moreover, petitioner's lawyer would have had a better understanding of the issues in the case, and therefore been better equipped to present them at trial had he been appointed to represent petitioner in these preliminary stages.

Other factors also indicate that petitioner was denied constitutionally acceptable representation. Perhaps most damaging to his case from a factual standpoint was that alibi witnesses were not interviewed or called to testify. In addition, identification evidence was not minimized as it should have been. The victim's identification testimony was objectionable as being impermissibly tainted by prior suggestive procedures, the testimony of Williams that another person saw Dixon at the scene should have been excluded as hearsay, and the otherwise proper identification by Williams was impeachable by the prior inconsistent committal hearing testimony. Whereas the state should have been limited to one identification by an impeached witness, however, it was able to present without objection three sources of identification placing petitioner at the scene. This, plus the absence of alibi witnesses, of course, meant certain conviction.

Petitioner was also entitled to have several sound legal arguments considered

by the trial court. Most importantly, it was not argued that armed robbery had not been committed because the evidence did not show the use of an offensive weapon toward the victim. In addition, no objection was made that the charge to the jury improperly shifted the burden of proof to the defendant.

A further deficiency in petitioner's representation was the absence of a challenge to the composition of the grand and petit juries. Despite extensive litigation in neighboring Mitchell County concerning the county's juries, culminating in a finding of illegal exclusion of blacks by the Supreme Court in 1956 in *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967), no similar challenge was raised on petitioner's behalf less than three years later.

The combination of these circumstances demonstrates that petitioner was convicted in violation of his sixth amendment right to counsel. He is therefore entitled to federal habeas relief on that ground.

 Finally, petitioner was indicted and tried by juries whose members were selected in clear violation of the constitution. Despite this undisputed denial of petitioner's rights, however, respondent asserts that petitioner is not entitled to relief on this ground. In support of this position, respondent argues that petitioner's failure to object to the illegal jury composition before trial is a waiver of that claim.

In *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), the black petitioner in a 28 U.S.C. § 2255 proceeding challenged his federal conviction on the ground that the indicting grand jury had been discriminatorily composed. Petitioner had first raised this issue in his collateral attack and had thus failed to comply with Rule 12 of the Federal Rules of Criminal Procedure which requires that such a challenge be made prior to trial. Rejecting petitioner's claim that waiver of a constitutional right must be undertaken "knowingly and understandingly" and that waiver of

this challenge could not result from a failure to object under cases such as *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the Court held that petitioner's claim was foreclosed by the express waiver provision in the rule. The Fifth Circuit has adopted the same position with respect to state prisoners when the state has a procedural rule requiring that objections to the composition of juries be lodged prior to trial. *E. g., Dumont v. Estelle*, 513 F.2d 793 (5th Cir. 1975) (Texas); *Morris v. Sullivan*, 497 F.2d 544 (5th Cir. 1974) (Alabama); *Newman v. Henderson*, 496 F.2d 896 (5th Cir. 1974) (Louisiana); *Rivera v. Wainwright*, 488 F.2d 275 (5th Cir. 1974) (Florida).

The beginning point for consideration of whether Georgia has such a procedural rule in Ga.Code Ann. § 59–803, which provides:

> "The accused may, in writing, challenge the array for any cause going to show that it was not fairly or properly impaneled, or ought not to be put upon him; the sufficiency of which challenge the court shall determine at once. If sustained, a new panel shall be ordered; if not sustained, the selection of jurors shall proceed."

This statute obviously does not specify that waiver occurs upon failure to object. However, the Supreme Court of Georgia in *Young v. State*, 232 Ga. 285, 206 S.E.2d 439 (1974), in refusing on direct appeal to consider a challenge to the jury composition, did state that failure to object in Georgia does constitute waiver:

> "The procedure in this state has long required a criminal defendant to raise a challenge to the jury lists at the time the jury is 'put upon him' or else he waives his right to object." *Id.* at 286, 206 S.E.2d at 439.

Other Georgia authorities suggest, however, that the procedural rule announced in *Young* is inapplicable in circumstances such as those presented here. In *Hill v. Stynchcombe*, 225 Ga. 122, 166 S.E.2d 729 (1969), the petitioner sought

habeas relief on the ground that the jury had not been drawn in open court as required by Georgia law. In refusing to grant relief on this ground because petitioner had not objected prior to trial, the court noted that the petitioner had not shown lack of knowledge of these defects, or the violation of a federal constitutional right (*id.* at 127–28, 166 S.E.2d 729), thus indicating that the result would have been different had either of those circumstances been involved. *See also Wooten v. State,* 224 Ga. 106, 109, 160 S.E.2d 403 (1968).

Under *Hill,* then, the procedural rule which might otherwise bar relief is inapplicable here; neither he nor his counsel was aware of the constitutional defects in the jury selection procedures and he is grounding his right to relief on the federal constitution. Moreover, petitioner was convicted some four years prior to the decision in *Young.* At that time no clear procedural rule governing waiver upon failure to object existed and the *Davis* principle of automatic waiver in a federal court, grounded in the presence of an express, procedural rule, can not properly be applied to petitioner.

Furthermore, Georgia's habeas corpus statute in effect at the time of petitioner's conviction provided that waiver of federal rights to be valid must be an "intentional relinquishment or abandonment of a known right or privilege . . . done voluntarily, knowingly, and intelligently." Ga.Code Ann. § 50–127(1) (prior to 1975 Amendment, [1975] Ga.Laws 1143). This statutory language clearly demonstrates that Georgia criminal procedure did not impose the sanction of waiver for failure to object prior to trial to jury selection procedures which infringe federal rights. The Georgia legislature's amendment of this statute in 1975, [1975] Ga.Laws 1143, to provide that failure to object to jury composition prior to trial would constitute waiver is a recognition that the law in effect when petitioner was indicted and tried did not bar post-conviction relief on that ground. The court declines to give retroactive effect to a procedural rule

regarding such an important substantive right. Because Georgia had no procedural rule by decision or statute substantially similar to the federal rule, therefore, petitioner's claim here is not waived and he is entitled to relief from a conviction based on indictment and trial by unconstitutionally selected juries. *Whitus v. Georgia, supra.*

In summary, petitioner has demonstrated five specific denials of his constitutional rights, each of which alone would entitle him to federal habeas relief. Accordingly, the writ of habeas corpus must be granted.

It is therefore ordered, adjudged and decreed that petitioner's conviction be set aside and that petitioner within sixty (60) days after this judgment becomes final as a result of the failure of defendant to lodge an appeal or as the result of the issuance of a mandate affirming this decision, whichever is later, be reindicted and tried, failing which this writ of habeas corpus without further order shall be made absolute and petitioner shall be released from custody.