James Lee SPENCER,
Petitioner-Appellant,

v.

Ralph KEMP, Warden, Georgia Diagnostic & Classification Center,
Respondent-Appellee.

No. 82–8408.

United States Court of Appeals,
Eleventh Circuit.

Jan. 23, 1986.

Edward D. Tolley, Athens, Ga., Anthony G. Amsterdam, John Charles Boger, Jack Greenberg, James N. Nabrit, III, Joel Berger, Deborah Fins, James S. Liebman, New York City, for petitioner-appellant.

William Hill, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

William Sumner, Quintus W. Sibley, Atlanta, Ga., Thomas M. Lahiff, Jr., Skadden, Arps, Slate, Meagher & Flom, New York City, for amicus-alpha Otis O'Daniel Stephens.

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON, and CLARK, Circuit Judges.

HILL, Circuit Judge:

Petitioner James Lee Spencer was convicted of murder and sentenced to death in Georgia state court in 1975.[1] The Georgia Supreme Court upheld the conviction and sentence on direct appeal in 1976. *Spencer v. State*, 236 Ga. 697, 224 S.E.2d 910 (1976), *cert. denied*, 429 U.S. 932, 97 S.Ct. 339, 50 L.Ed.2d 302 (1976). In 1977, Spencer filed a petition seeking state habeas relief, which was denied after an evidentiary hearing. That decision was affirmed by the Georgia Supreme Court. *Spencer v. Hopper*, 243 Ga. 532, 255 S.E.2d 1 (1979), *cert. denied*, 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979).

---

1. The facts that led to Spencer's conviction are set forth in the panel opinion in this case, *Spencer v. Zant*, 715 F.2d 1562, 1564–65 (11th Cir.1983).

The petition now before this court, seeking a writ of habeas corpus under 28 U.S.C. § 2254, was filed in district court in 1979. The district court found petitioner's allegations of constitutional deprivations to be without merit, and denied the writ. *Mitchell v. Hopper*, 538 F.Supp. 77 (S.D.Ga. 1982). On appeal, a panel of this court remanded two of petitioner's claims to the district court for further evidentiary hearings. *Spencer v. Zant*, 715 F.2d 1562 (11th Cir.1983). We then determined to rehear the case en banc. *Id.* at 1583. We now reverse the decision of the district court denying Spencer's federal habeas relief, and we remand this case to the district court to allow Spencer to raise and develop his claim that he was convicted by a jury drawn from an unconstitutionally composed array.

## DISCUSSION

Spencer raises five issues on this appeal, alleging that:

(1) the trial court's jury instruction at his hearing on his special plea of insanity violated his due process rights; (2) his jury array was unconstitutionally composed insofar as blacks and women were underrepresented; (3) certain jurors were improperly dismissed during voir dire in violation of the rule of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); (4) the trial court's jury instruction violated *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1977), by relieving the state of the burden of proof on an element of the crime; and (5) the Georgia death penalty is arbitrary and discriminatory and therefore unconstitutional as applied.

*Spencer v. Zant*, 715 F.2d at 1565. We agree with the panel's determination that issues one, three, and four provide no justification for granting habeas relief. We therefore address below only petitioner's claim that the Georgia death penalty is unconstitutionally applied and his challenge to the array from which his jury was chosen.

## I. Right to an Evidentiary Hearing on the Constitutionality of the Death Penalty

In his federal habeas petition, Spencer alleges that Georgia administers its death penalty statute in an arbitrary and discriminatory manner in violation of the eighth and fourteenth amendments to the United States Constitution. Similar allegations had been rejected on petitioner's direct appeal and in his state habeas proceedings. Specifically, he contends that the death penalty in Georgia is disproportionately applied on the basis of the race of defendants and the race of victims.

On January 26, 1981, the district court held a hearing to determine the necessity of conducting an evidentiary hearing on this issue. At that time, counsel for petitioner proffered that significant social science research and analysis of the pattern and practice of the imposition of capital sentences in Georgia had recently become available, and that this work had not been available at the time of petitioner's state habeas hearing in 1977. Petitioner further proffered that these studies showed racial and geographic arbitrariness in the imposition of capital sentences based on the race of defendants and race of the victims. The district court denied an evidentiary hearing and dismissed the claim, determining that the claim was "effectively foreclosed" by the decisions in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), *Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir.1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979), and *Smith v. Balkcom*, 660 F.2d 573 (5th Cir. Unit B 1981), *modified*, 671 F.2d 858 (5th Cir. Unit B), *cert. denied*, 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982). *Mitchell v. Hopper*, 538 F.Supp. at 90–91.

Petitioner subsequently filed a timely Rule 59 motion to alter or amend the judgment, alleging newly discovered evidence. In this motion, petitioner proffered the fact that Professor David C. Baldus had just completed detailed statistical research on Georgia's capital sentencing patterns. According to the proffer, the Baldus study reinforced and expanded upon the evidence

of racial discrimination identified in earlier studies. The district court denied the motion, concluding that "the gist of petitioner's contention has been determined as a matter of law" by the Eleventh Circuit in *Spinkellink* and *Smith.*

On appeal, petitioner requests a remand for an evidentiary hearing in which he would be allowed to introduce the statistical data and reports proffered to the district court. Whether he should be allowed such an evidentiary hearing was the issue on which we granted rehearing *en banc.*

In his briefs and at oral argument, petitioner placed primary reliance on the Baldus study, which is argued to constitute the most thorough and sophisticated study yet completed on the Georgia capital sentencing system. The evidence proffered by Spencer in this case had already been introduced into the district court record in *McCleskey v. Zant,* 580 F.Supp. 338 (N.D. Ga.1984), when this case was argued *en banc.*[2] The district court rendered its decision in *McCleskey* shortly after oral argument in this case, and appeals were taken immediately. Because the evidence on which Spencer's proffer relied would be more fully developed in the record on appeal in *McCleskey,* we postponed our resolution of this case pending our *en banc* analysis and resolution of *McCleskey.*

■ Spencer's contentions on this point are now directly controlled by our recent decision in *McCleskey v. Kemp,* 753 F.2d 877 (11th Cir.1985) (*en banc*). In that case this court held that even if the Baldus study proved all the facts it was argued to prove, it would remain legally insufficient to support an eighth or fourteenth amendment challenge to the Georgia capital sen-

tencing system alleging that the system was being arbitrarily and discriminatorily applied. Since what the Baldus study is contended by petitioner to prove is insufficient to support an eighth or fourteenth amendment challenge to the operation of the Georgia system, petitioner is not entitled to an evidentiary hearing for the taking of that evidence. Petitioner did not raise any allegations of intentional or purposeful discrimination against him in his sentencing; we therefore affirm the district court's denial of an evidentiary hearing.

## II. *Challenge to the Jury Array*

Spencer alleges that blacks and women were grossly underrepresented on the Burke County jury array from which his jury was drawn, causing him to be tried by a jury that was unconstitutionally composed. Because the district court found Spencer's constitutional challenge to have been untimely and therefore barred by procedural default, we must decide on this appeal only whether he should be permitted to present his claim to the district court. We hold that he should be allowed to raise this claim on federal habeas, and we therefore remand this case to the district court to permit him to do so.

### A. *Factual and Procedural Background*

On January 6, 1975, the first day of Spencer's trial, 42 prospective jurors had been subpoenaed for service. After a delay during which Spencer's special plea of insanity was considered, the trial resumed on January 7. After counsel had announced their readiness to proceed with *voir dire,* but before the selection of jurors

---

**2.** Petitioner makes it clear that the evidence he is seeking to present (*i.e.,* the Baldus study) is the same evidence that was presented to the district court during a two-week hearing in the *McCleskey* case. As petitioner states in his brief to this en banc court:

> The evidence that petitioner proffered in late April of 1982 has not yet been published in written form. It was presented at length during the two-week *McCleskey v. Zant* hearing in August 1983.

First Supplemental Brief for Petitioner-Appellant on Rehearing En Banc, at 19 (footnote

omitted). The case of *McCleskey v. Zant,* referred to in petitioner's brief, is the same case as *McCleskey v. Kemp,* decided en banc by this court. In petitioner's proffer to the district court, he also indicated that he wished to introduce social science research by Dr. William Bowers, Glenn Pierce and George Dix. This material was found insufficient to warrant an evidentiary hearing in *Ross v. Kemp,* 756 F.2d 1483 (11th Cir.1985) (en banc), and *Mitchell v. Kemp,* 762 F.2d 886 (11th Cir.1985).

had begun, Spencer presented the trial judge with a *pro se* petition for removal which he allegedly had filed in federal court, seeking removal on the grounds that blacks were systematically excluded from Burke County jury rolls. The petition did not mention a jury challenge having been made in the trial court, as none had been made. The district attorney took the position that the removal petition had not been filed in federal court, and the trial court ruled that it retained jurisdiction. After this ruling, *voir dire* began and nineteen jurors tentatively qualified by the end of the day.

The next morning, January 8, before *voir dire* resumed, Spencer filed a *pro se* motion challenging the jury array. No evidence was produced to support the motion. The trial judge overruled the motion, finding that it had not been timely filed.

On January 15, 1975, immediately after the qualification of the jury was completed, the trial judge asked the district attorney if he was ready to proceed with the trial. The district attorney responded that the state was ready, but that they would argue the motion challenging the jury array if Spencer's counsel insisted on the motion. Both the judge and Spencer's counsel stated that they thought the motion had been disposed of. The district attorney then asked whether or not the accused insisted on the motion, to which Spencer's counsel replied, "[n]ot while I'm under the impression that [it has] been disposed of." The

jury was then sworn and the trial commenced.

After his conviction, Spencer did not raise the jury array issue on direct appeal, but sought to assert it in his 1977 state habeas petition. The Georgia Supreme Court affirmed the state habeas court's denial of habeas relief, finding that "Spencer's jury challenge was not timely made in the trial court, was not supported by evidence in the trial court, was waived before the trial began, and was not urged on direct appeal." *Spencer v. Hopper*, 255 S.E.2d at 4.

The federal district court found that the Georgia Supreme Court's conclusions that the challenge was not timely filed and had been waived by failure to pursue it on direct appeal were "well supported by the evidence and are binding on this court." 538 F.Supp. at 95. Furthermore, the court held that Spencer had not made a sufficient showing of cause to excuse his procedural default and permit federal habeas review under the "cause and prejudice" test of *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977).[3] Petitioner appeals from this ruling.

## B. *General Principles*

There can be little doubt that, if the timeliness of petitioner's challenge were evaluated according to federal procedural requirements, the claim Spencer seeks to make would be found to have been raised too late to preserve the issue for consideration on collateral attack.[4] In this

---

3. The district court stated that:

   Spencer has ... made no showing of cause. His silence on the subject at the hearings before this Court requires reliance on the record for evidence of cause. The record offers no support for the petitioner in this regard. Spencer filed his challenges late. For cause he must rely on his right to represent himself and his ignorance of the law requiring timely challenges to juries. However, while he may have had the right to file *pro se* motions, he also had a court appointed attorney to use as a resource to advise him on the legal effect of these motions. That he declined to do so and effectuated a procedural default as a result is "inadvertence" in the sense discussed above. This Court will not regard it as sufficient cause. Additionally, the challenge, timely or not, was not pursued on

   appeal. In the absence of any proffered reason for this, the Court need not go so far as to label it a purposeful relinquishment of the issue, but certainly the petitioner's silence on the issue is, at the least, a failure to uphold the burden placed on him by *Wainwright v. Sykes*.

   *Mitchell v. Hopper*, 538 F.Supp. at 97.

4. *See Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973) (waiver provisions of Rule 12(b)(2) of Federal Rules of Criminal Procedure applicable to postconviction relief proceeding pursuant to 28 U.S.C. § 2255); *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963) (timing and waiver provisions of Rule 12(b)(2) apply to constitutional challenges to petit and grand jury arrays; relief from those provisions will not be

federal habeas corpus proceeding, however, petitioner challenges the constitutionality of a state court conviction. It is therefore our duty, according to controlling Supreme Court precedents, to evaluate the timeliness of petitioner's claim and determine whether any procedural default has occurred in accordance with state rather than federal procedural law, as long as state law furnishes an independent and adequate procedural ground for the decision of the state courts not to grant the petitioner the relief he seeks. *Ulster County Court v. Allen,* 442 U.S. 140, 147–54, 99 S.Ct. 2213, 2219–23, 60 L.Ed.2d 777 (1978).[5] Thus, if a state possesses an independent and adequate procedural rule that requires a criminal defendant to object in a timely manner to an asserted defect at trial, the failure to make such a timely objection will ordinarily preclude consideration of the claimed defect in a federal habeas proceeding, absent a showing of cause and prejudice. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976).[6] Conversely, state law concerning waiver or preclusion of claims in state court may effectively provide for federal collateral review of federal constitutional claims that could not be asserted under

federal standards of waiver or procedural default. *Lefkowitz v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975). With these basic principles in mind, we turn to an examination of the Georgia procedural law that is applicable to Spencer's challenge.

### C. *Analysis*

Under Georgia law, a criminal defendant must raise a challenge to the jury array at or before the time the jury panel is first "put upon" him (unless he has been prevented from doing so); if he does not object at that time, he waives his right to raise such a claim later at trial or on direct appeal. *Holsey v. State,* 235 Ga. 270, 219 S.E.2d 374, 376 (1975); *Young v. State,* 232 Ga. 285, 206 S.E.2d 439, 442 (1974); *Cobb v. State,* 218 Ga. 10, 126 S.E.2d 231, 239 (1962), *cert. denied,* 371 U.S. 948, 83 S.Ct. 499, 9 L.Ed.2d 497 (1963). Most prior Georgia cases applying this rule involve defendants who waited until after trial to challenge the jury array. Georgia statutes and case law indicate, however, that a jury is "put upon" a defendant at the time that the jury array is seated and *voir dire* commences.

The applicable sections of the Georgia Code provide that:

"before the *voir dire* examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier." 28 U.S.C. § 1867(a).

---

granted where defendant has not shown cause and prejudice); *Frazier v. United States,* 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187 (1948) (objection to method of selecting jurors first raised during *voir dire* properly overruled as untimely and unsupported by contemporaneously tendered proof); *United States v. Hoffa,* 349 F.2d 20 (6th Cir.1965), *aff'd,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) (under Rule 12(b)(2), motions raised on first day of trial to strike array of 200 prospective petit jurors when 76 jurors were sitting in courtroom awaiting *voir dire* properly denied as untimely, where defendants had sufficient information to make their motions before opening day of trial).

Where the jury in a federal criminal case has been selected in accordance with a local jury selection plan devised and implemented pursuant to the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.,* a constitutional challenge to the racial composition of the jury must be made in strict compliance with the provisions of that Act governing the raising of such claims. *United States v. Green,* 742 F.2d 609, 612 (11th Cir.1984). The Act provides that a criminal defendant may raise such a challenge

**5.** The meaning and significance of the requirement that the state procedural ground constitute an independent and adequate basis for the state court decision before the state ground is given preclusive effect on federal habeas are discussed *infra* at 1470–72.

**6.** If the state courts themselves decline to apply an available procedural bar and address the merits of the petitioner's constitutional claim, the issue thereby presented and addressed is not precluded in federal court by virtue of the otherwise applicable state law procedural bar. Rather, where "the state courts entertained the federal claims on the merits, a federal habeas court must also determine the merits of the applicant's claim." *Newman v. Henderson,* 539 F.2d 502, 504 (5th Cir.1976) (*quoting Lefkowitz v. Newsome,* 420 U.S. 283, 292 n. 9, 95 S.Ct. 886, 891 n. 9, 43 L.Ed.2d 196 (1976)).

The clerk shall make out three lists of each panel and shall furnish one to the prosecuting counsel and one to the counsel for the defense. The clerk shall then call over the panel and it shall immediately be put upon the accused.

O.C.G.A. § 15–12–161 (formerly Ga.Code § 59–802); and that:

The accused may, in writing, challenge the array for any cause going to show that it was not fairly or properly impaneled or ought not be put upon him. The court shall determine the sufficiency of the challenge at once. If sustained, a new panel shall be ordered; if not sustained, the selection of jurors shall proceed.

O.C.G.A. § 15–12–162 (formerly Ga.Code § 59–803). This has long been the law in Georgia. *See Whitworth v. State*, 155 Ga. 395, 117 S.E. 450 (1923); *Felker v. Johnson*, 53 Ga.App. 390, 186 S.E. 144 (1936).[7]

More recently, the Georgia Supreme Court held that a claim by a state habeas corpus petitioner that his jury was improperly drawn "should have been, but was not, raised by a timely challenge to the array before the jurors were put upon him and his failure to do so amounts in law to a forfeiture of that right." *Buxton v.*

*Brown*, 222 Ga. 564, 150 S.E.2d 636, 637 (1966). The court in *Buxton* cited in support of its holding one of its earlier decisions in which the court stated that an objection to the traverse jury array in a criminal case "must be raised by a challenge to the array at the earliest opportunity the defendant has to avail himself of that right." *Cobb v. State*, 126 S.E.2d at 239. These cases indicate to us that, in order to avoid waiving any right to challenge the composition of a traverse jury on appeal, a defendant must raise such a challenge prior to the commencement of *voir dire*.

The requirement that defendants first make such challenges before *voir dire* begins is not an unduly burdensome one.[8] Defendants and their attorneys have ample opportunity to acquaint themselves with information upon which to base a decision to abide or attack the jury. Under general Georgia law, the names in the jury box are revised every two years, O.C.G.A. § 15–12–40(a), and those names are public record in the office of the clerk of the superior court. O.C.G.A. § 15–12–43. Well in advance of a term of court, the venire for that term is selected by the judge drawing names from the jury box, in open court.[9] O.C.G.A.

---

**7.** The court in *Felker* described the procedure for challenging a jury array for failure to contain the requisite number of potential jurors as follows:

In the trial of felony cases, "The clerk shall make out three lists of each panel, and furnish one to the prosecuting counsel, and one to the counsel for the defense. The clerk shall then call over the panel, and it shall be immediately put upon the accused." Code of 1933, § 59–802. *If there is no challenge to the array each juror is then called by the clerk,* and in calling each juror he should be presented to the accused in such a manner as he can be distinctly seen, and then counsel for the accused or the State may challenge him upon the statutory grounds. *Whitworth v. State*, 155 Ga. 395 (117 S.E. 450). In felony cases *"If a panel* of less than forty-eight jurors *is put upon the prisoner and he does not challenge the array, but proceeds with the selection of the jury, he can not thereafter, as a matter of right, demand the filling of the panel." Ivey v. State*, 4 Ga.App. 828 (62 S.E. 565). "If the panel does not contain the requisite number of jurors when it is put upon the defendant, the law prescribes, in Penal Code, § 972, his

sole remedy,—he may challenge the array." *Ivey v. State*, supra.
*Felker v. Johnson*, 53 Ga.App. at 394, 186 S.E. at 146 (emphasis added).

**8.** We note that the Georgia rule imposes a timeliness requirement that is no more rigorous than that imposed by the analogous federal rule. *See supra* note 4.

**9.** At the close of each term of court, in open court, the superior court judge selects trial jurors for the next term of court. O.C.G.A. §§ 15–12–120, 15–12–62. A trial jury box, in which have been placed tickets containing all the names of eligible trial jurors on the jury list, is placed in the courtroom. O.C.G.A. § 15–12–42(a). At the judge's direction, the box is unlocked, the seal broken, and the judge draws one ticket, upon which is recorded one name, from the box. O.C.G.A. §§ 15–12–120, 15–12–62. The ticket is returned to the box, but in a compartment separate from the one from which it was drawn, not to be subject to further drawing until all slips in the first compartment have been used. O.C.G.A. §§ 15–12–42(a), 15–12–120, 15–12–62. As each ticket is drawn, the name

§§ 15–12–42, 15–12–120, 15–12–62; *see Blevins v. State,* 220 Ga. 720, 141 S.E.2d 426, 430 (1965) (juries must be drawn in open court). The list of jurors drawn is entered upon the minutes of the clerk of the court, a public record which may be perused by all with interest in it. *See* O.C.G.A. § ˋ15–6–61(2) and (9). A challenge to the jury array selected may be filed at any time until the parties commence selection of a jury from the list delivered, as provided in O.C.G.A. §§ 15–12–161, 15–12–162.

Further, the Georgia rule is rooted in sound policy. It prevents a party from tentatively accepting a jury array while reserving any challenge he thinks he may have until he has begun to explore how he might fare in jury selection. The efficient administration of justice would be obstructed if a defendant could accept the array for purposes of commencing jury selection, while reserving a challenge to the array to be exercised at a later time.[10] *See Williams v. State,* 210 Ga. 665, 82 S.E.2d 217, 219–20 (1954), *remanded for reconsideration,* 349 U.S. 375, 75 S.Ct. 814, 99 L.Ed. 1161, *aff'd,* 211 Ga. 763, 88 S.E.2d 376 (1955), *cert. denied,* 350 U.S. 950, 76 S.Ct. 326, 100 L.Ed. 828 (1956).

Petitioner's motion to challenge the jury array was not raised in the state proceedings until *voir dire* was well under way.[11] According to long-established Georgia law, Spencer's challenge thus appears not to have been timely filed in the trial court, and this untimeliness would clearly preclude review of his constitutional claim on direct appeal from his conviction. Finding Spencer's failure to lodge a timely challenge to the composition of the jury array to constitute a waiver of his right to raise such a claim at a later date, the Georgia courts also declined to reach the merits of Spencer's claim in his state habeas proceeding.[12] The state of Georgia argues on this appeal that the procedural bar imposed on Spencer in the state courts on state habeas should also be respected in this ˋcourt on federal habeas, as it is urged to constitute an independent and adequate state procedural ground for the rejection of petitioner's claim.

In our evaluation of this asserted procedural bar, however, we find ourselves confronted with a somewhat peculiar statute enacted by the Georgia legislature in 1967 to govern certain waiver questions in state habeas corpus proceedings. The statute (hereinafter "the 1967 statute"), enacted as part of the Habeas Corpus Act of 1967,[13] provided that in such proceedings

thereon is recorded on a list, apparently by the clerk of the court. O.C.G.A. § 15–12–42(a). The drawing continues until a sufficient number of jurors have been drawn for the term of court.

**10.** As the Georgia Supreme Court stated in denying habeas relief to Spencer: "To permit such a challenge to be pursued now would simply mean that no one would make a jury challenge until after they were convicted and that conviction was affirmed on appeal." *Spencer v. Hopper,* 255 S.E.2d at 4.

**11.** It may be argued that, as a matter of Georgia law, the petition for removal Spencer presented to the trial court on January 7 constituted a statutorily sufficient motion to challenge the jury array under O.C.G.A. § 15–12–161 (formerly Ga.Code § 59–802). Finding that "the pro se motion to challenge the jury was in fact filed on January 8, 1975," however, the state habeas court obviously did not consider the removal petition legally sufficient to raise the jury challenge for purposes of determining its timeliness. The Georgia Supreme Court specifically approved this finding of the habeas court when it

affirmed the judgment of that court in its entirety. *Spencer v. Hopper,* 255 S.E.2d at 3. Although we do not agree with the conclusion of the Georgia courts that Spencer's challenge is procedurally barred, *see infra* at pp. 1470–72, we see no reason to disregard the judgment of the Georgia courts that Spencer's removal petition did not constitute a legally sufficient motion to challenge the jury array.

**12.** In support of its decision affirming the habeas court's decision not to consider the merits of Spencer's claim, the Georgia Supreme Court also found the jury challenge barred because it "was not supported by evidence in the trial court, was waived before the trial began, and was not urged on direct appeal." *Spencer v. Hopper,* 255 S.E.2d at 4. Our analysis of the significance of the untimeliness of petitioner's challenge for purposes of federal habeas applies to these findings as well, so we do not discuss them here in detail.

**13.** The Act may be found at 1967 Ga.L. 835. The history and purpose of the writ of habeas corpus in Georgia and the Habeas Corpus Act of

Rights conferred or secured by the Constitution of the United States shall not be deemed to have been waived unless it is shown that there was an intentional relinquishment or abandonment of a known right or privilege which relinquishment or abandonment was participated in by the party and was done voluntarily, knowingly and intelligently.

1967 Ga.L. 835, 836 (codified at Ga.Code § 50–127(1)) (amended 1975). The statute was amended by an act approved April 24, 1975, to exempt from the blanket non-waiver rule challenges to the composition of grand or traverse juries.[14] Petitioner was tried in January, 1975, when the 1967 statute was still in effect. The Georgia courts nonetheless applied the amended version of the statute to Spencer's state habeas petition, thereby failing to accord him the benefit of the non-waiver provision of the 1967 statute. Because the applicability of the 1967 statute to this federal habeas corpus proceeding was of considerable concern to us and had not been addressed by counsel in their briefs or at oral argument, the court requested supplemental briefing on this issue. Having received and considered those briefs, we are now able to resolve this issue and finally to decide Spencer's appeal.

Although no official legislative history of the Habeas Corpus Act of 1967 exists, the Act by its terms leaves little doubt concerning its purpose:

Section 1. Statement of Legislative Intent and Purpose. The General As-

sembly finds that expansion of the scope of habeas corpus in federal court by desisions [sic] of the United States Supreme Court, together with other decisions of said court (a) substantially curtailing the doctrine of waiver of constitutional rights by an accused and (b) limiting the requirement of exhaustion of state remedies to those currently available, have [sic] resulted in an increasingly larger number of state court convictions being collaterally attacked by federal habeas corpus based upon issues and contentions not previously presented to or passed upon by courts of this State; that such increased reliance upon federal courts tends to weaken state courts as instruments for the vindication of constitutional rights, with a resultant deterioration of the federal system and federal-state relations; that to alleviate said problems, it is necessary that the scope of state habeas corpus be expanded and the state doctrine of waiver of rights modified. The General Assembly further finds that expansion of state habeas corpus to include many sharply-contested issues of a factual nature requires that only the superior courts have jurisdiction of such cases.

1967 Ga.L. 835.

Thus it seems quite likely that, as others have concluded,[15] the Georgia legislature was responding directly to the decision of the United States Supreme Court in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and subsequent interpretations thereof by the Fifth Circuit Court of Ap-

---

1967 are considered in detail in Wilkes, *A New Role for an Ancient Writ: Postconviction Habeas Corpus Relief in Georgia (Part I)*, 8 Ga.L.Rev. 313 (1974), and Wilkes, *A New Role for an Ancient Writ: Postconviction Habeas Corpus Relief in Georgia (Part II)*, 9 Ga.L.Rev. 13 (1974). *See also* Wilkes, *Postconviction Habeas Corpus Relief in Georgia: A Decade After the Habeas Corpus Act*, 12 Ga.L.Rev. 249 (1978).

14. *See* 1975 Ga.L. 1143, 1143–44. The language quoted above was modified to read as follows: Except for objections relating to the composition of a grand or traverse jury, rights conferred or secured by the Constitution of the United States shall not be deemed to have been waived unless it is shown that there was

an intentional relinquishment or abandonment of a known right or privilege which relinquishment or abandonment was participated in by the party and was done voluntarily, knowingly and intelligently. The right to object to the composition of the grand or traverse jury will be deemed waived under this section, unless the person challenging the sentence shows in the petition and satisfies the court that cause exists for his being allowed to pursue the objection after the conviction and sentence has [sic] otherwise become final.
*Id.* (codified at O.C.G.A. § 9–14–42).

15. *See Stewart v. Ricketts*, 451 F.Supp. 911, 915 (1978); Wilkes II, *supra* note 13, at 41–53.

peals. In *Fay v. Noia* the Supreme Court held that a federal habeas court could only decline to reach the merits of a federal claim on the grounds of an asserted procedural default where the default amounted to a deliberate bypass of state remedies. 372 U.S. at 438–39, 83 S.Ct. at 849. The case before the court concerned directly only the doctrine of exhaustion of state remedies, as the petitioner there had properly presented his claim at trial but failed to appeal it thereafter. Applying *Fay v. Noia* to other cases, however, the Fifth Circuit found it to have announced a new federal standard of waiver of constitutional rights as the appropriate basis for determining not only whether the federal habeas petitioner had adequately exhausted state remedies, but also whether he could be held to have forfeited his federal rights by failing to raise a timely and proper objection in the sentencing court. *Whitus v. Balkcom*, 333 F.2d 496, 500–01 (5th Cir.), *cert denied*, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964). *See also Cobb v. Balkcom*, 339 F.2d 95, 99 (5th Cir.1964); *Whippler v. Balkcom*, 342 F.2d 388, 391 (5th Cir.1965) (dictum). The conclusion that these are the decisions to which the Habeas Corpus Act of 1967 was intended to respond is bolstered by the notoriety of those decisions in Georgia legal circles in the mid-1960's [16] and the striking similarity of the terms of the waiver provision of the 1967 statute to the language used by the Supreme Court to describe its holding in *Fay v. Noia*.[17]

■ The 1967 statute addressed habeas corpus, not direct appeal. The Georgia

courts continued to hold consistently that a defendant's failure to raise a timely constitutional challenge to the composition of a grand or traverse jury array constituted a waiver of the right to raise such a claim later on direct appeal. *See, e.g., Tennon v. State*, 235 Ga. 594, 220 S.E.2d 914 (1975), *cert. denied*, 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976), *Sanders v. State*, 235 Ga. 425, 219 S.E.2d 768 (1975), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976); *Holsey v. State*, 235 Ga. 270, 219 S.E.2d 374 (1975); *Young v. State*, 232 Ga. 285, 206 S.E.2d 439 (1974); *Williams v. State*, 232 Ga. 203, 206 S.E.2d 37 (1974); *Simmons v. State*, 226 Ga. 110, 172 S.E.2d 680 (1970); *Miller v. State*, 224 Ga. 627, 163 S.E.2d 730 (1968). In state habeas corpus proceedings, however, petitioners were usually permitted to raise constitutional jury composition claims in spite of any failure to object in a timely manner at trial. *See, e.g., Mitchell v. Smith*, 229 Ga. 781, 194 S.E.2d 414 (1972); *Johnson v. Caldwell*, 228 Ga. 776, 187 S.E.2d 844 (1972). *But see Atkins v. Martin*, 229 Ga. 815, 194 S.E.2d 463 (1972) (waiver found; no mention of habeas statute); *Ferguson v. Caldwell*, 233 Ga. 887, 213 S.E.2d 855 (1975) (under 1967 statute, voluntary and intelligent waiver apparently found). Other constitutional claims were also generally entertained on state habeas despite the petitioner's failure to lodge a timely objection at trial. *See e.g., Blaylock v. Hopper*, 233 Ga. 504, 212 S.E.2d 339 (1975); *Anthony v. Hopper*, 235 Ga. 336, 219 S.E.2d 413 (1975); *Parrish v. Hopper*, 238 Ga. 468, 233 S.E.2d 161 (1977).[18]

---

16. The impact of the cited cases on Georgia law and their likely effect on the relationship between the federal courts and Georgia courts were prominent subjects of speeches and articles appearing in 1964 and 1965. *See* Wilkes II, *supra* note 13, at 50 (providing examples).

17. Compare the waiver provision (quoted previously) with the following language from *Fay v. Noia:*

The classic definition of waiver enunciated in *Johnson v. Zerbst,* 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461]—"an intentional relinquishment or abandonment of a known right or privilege"—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the

privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default.
372 U.S. at 439, 83 S.Ct. at 849.

18. Citing *Stewart v. Ricketts,* 451 F.Supp. 911 (M.D.Ga.1978), the state argues that with the enactment of the 1967 statute Georgia did not alter its law concerning waiver of constitutional

After the enactment of the 1975 amendment exempting jury composition challenges from the blanket nonwaiver rule of the 1967 statute, however, the Georgia courts generally ceased giving effect to the 1967 statute, even in cases involving petitioners tried and convicted while that statute was still in force, and instead applied the statute as it had been amended in 1975. *See e.g., Smith v. Zant,* 250 Ga. 645, 301 S.E.2d 32 (1983); *Mitchell v. Hopper,* 239 Ga. 781, 239 S.E.2d 2 (1977), *cert. denied,* 435 U.S. 937, 98 S.Ct. 1513, 55 L.Ed.2d 534 (1978); *Fountain v. York,* 237 Ga. 784, 229 S.E.2d 629 (1976). *But see Smith v. Hopper,* 240 Ga. 93, 239 S.E.2d 510 (1977), *cert. denied,* 436 U.S. 950, 98 S.Ct. 2859, 56 L.Ed.2d 793 (1978); *House v. Stynchcombe,* 239 Ga. 222, 236 S.E.2d 353, *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977).[19] Consistent with its prior usual practice, the Georgia Supreme Court applied the amended version of the state habeas statute to Spencer's jury composition challenge despite the fact that he raised the constitutional claim found to be precluded under the amended statute several months before the preclusive amend-

claims. The state argues that because the statute's intent was only to allow Georgia courts to hear and adjudicate collateral attacks on state court convictions to the same extent that the federal courts would hear such claims on federal habeas, it should not be found to have altered the usual Georgia waiver of claims rules for any other purpose. The plain language of the 1967 statute can leave little doubt, however, about the accuracy of the Georgia Supreme Court's conclusion that the statute "expanded the scope of state habeas corpus and modified the state doctrine of waiver of rights." *McCorquodale v. Stynchcombe,* 239 Ga. 138, 236 S.E.2d 486, 489 *cert. denied,* 434 U.S. 975, 98 S.Ct. 534, 54 L.Ed.2d 467 (1977). Decisions of the United States Supreme Court in the 1970's effectively overruling much of the case law to which the 1967 statute was intended to respond may have rendered the statute no longer necessary to accomplish its original purpose. But we cannot ignore such a statute in this case simply because by respecting it we might not serve the legislative purpose that stimulated its enactment. To do so would violate the same principles of fundamental fairness that we find were violated when the Georgia Supreme Court retroactively applied the waiver provision of the 1975 amendment to the habeas statute to Spencer's case.

The state also argues that we should not apply the 1967 statute in this case because it constitutes an impermissible attempt to prescribe federal standards for waiver of federal constitutional claims in state court. This view of the legitimacy of the non-waiver provision of the 1967 statute was expressed well by Justice Hall of the Georgia Supreme Court in 1977:

What shall be effective to waive federal constitutional rights is a federal constitutional question. This court and not the legislature is entrusted with the interpretation of the Federal Constitution, (Const. Art. VI, Sec. II. par. IV; Code Ann. § 2–3704 (Rev.1973)), and our decision on this point is directed ultimately by rulings of the United States Supreme Court. An attempt by the legislature, such as we have here, to take one such ruling and enshroud it in statutory concrete to prevent any further

modification by further court rulings, must fail.

*Parrish v. Hopper,* 238 Ga. at 472, 233 S.E.2d at 164 (1977) (Hall, J., concurring specially). This contention seems plainly untenable, however, in light of the Supreme Court's clear rejection of a closely analogous (and perhaps even stronger) argument in *Lefkowitz v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975). *See id.* at 301, 95 S.Ct. at 895 (White, J., dissenting) ("[S]ince the applicable law in this case is federal, it is for us, and not the New York State Legislature, to say whether Fourth Amendment claims such as those involved here will or will not be waived by a guilty plea.")

19. *Smith v. Hopper,* 240 Ga. 93, 239 S.E.2d 510, and *House v. Stynchcombe,* 239 Ga. 222, 236 S.E.2d 353, both involved untimely challenges to traverse juries from which jurors had been excluded for cause on *Witherspoon* grounds. *See Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). In *Smith* the Georgia Supreme Court appeared to apply the cause requirement of the 1975 amendment to determine whether the petitioner could raise the claim on state habeas despite his failure to lodge a timely objection in the trial court when he was tried in January, 1975. The court stated however, that "[b]ecause this is a death penalty case, we will assume without deciding or finding that there is cause to allow these objections to the composition of the traverse jury after the convictions and sentences have otherwise become final." 239 S.E.2d at 510–11. The court then proceeded to determine Smith's claim on the merits. In *House,* decided almost contemporaneously with *Smith,* the court considered the merits of the petitioner's claim without even discussing the habeas statute. The court thus may only have reached the merits in *House* because it was a death penalty case as well. Both of these cases appear to represent purely discretionary departures from the usual practice of the Georgia courts to apply the waiver rule in effect at the time the case is decided on habeas rather than the rule in effect at trial.

ment became law. *Spencer v. Hopper*, 255 S.E.2d at 4.

Unfortunately, in no case has the Georgia Supreme Court addressed directly the important questions of fundamental fairness raised by such a retroactive application of the waiver provision of the amended statute to cases tried before the amendment went into effect. Several federal court decisions interpreting and applying the Georgia habeas corpus statutes indicate, however, that federal courts should generally determine questions of procedural default according to the habeas waiver law in effect at the time of the asserted waiver, and that retroactive effect should not be given to such statutes.[20] *See Lumpkin v. Ricketts*, 551 F.2d 680, 682 n. 2 (5th Cir.), *cert. denied*, 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316 (1977) (petitioner tried before enactment of 1967 statute; held, decisional law in effect at time of trial controls waiver issue); *Dixon v. Hopper*, 407 F.Supp. 58 (M.D.Ga.1976) (petitioner convicted in 1970; held, 1975 amendment to 1967 statute will not be applied retroactively to bar challenge to jury selection procedures not made before or during trial); *Stewart v. Ricketts*, 451 F.Supp. 911 (M.D.Ga.1978) (petitioner convicted in 1971; law in effect at time of trial applied, but claims held barred due to procedural default despite provisions of 1967 statute). *But see Dennis v. Hopper*, 548 F.2d 589 (5th Cir.1977) (petitioner convicted in 1969; held, without mentioning Georgia habeas statute, failure to raise timely challenge to composition of grand jury constitutes waiver); *Tennon v. Ricketts*, 574 F.2d 1243 (5th Cir.1978) (petitioner indicted in 1970; held, federal habeas court bound by Georgia Supreme Court's decision on petitioner's direct appeal that he was barred from challenging composition of grand jury because he failed to raise the claim before his indictment).

It might be argued that federal courts should determine questions of waiver and procedural default on federal habeas in accordance with state law rules governing such issues on direct appeal, ignoring entirely the waiver law applicable in state habeas proceedings. Where state law waiver rules are more lenient on state habeas than on direct appeal, however, we do not consider it appropriate to hold federal habeas petitioners to the more rigorous state law standards applicable on direct appeal. To do so would render state habeas rules like the non-waiver provision of the 1967 statute "trap[s] for the unwary." *Lefkowitz v. Newsome*, 420 U.S. at 293, 95 S.Ct. at 891. Such a view of the appropriate state procedural law to invoke on federal habeas is neither mandated nor suggested by the applicable Supreme Court case law, and we decline to adopt it in this case.

It might also be argued that federal habeas courts need not concern themselves with questions of fundamental fairness raised by state court findings of waiver or procedural default under state law, as federal courts do not sit to correct errors made by state courts in the interpretation and application of state law. It is established federal law, however, that a state court's rejection of a federal constitutional claim will only bar consideration of that claim on federal habeas if the state court's ruling rests on "independent and adequate" state grounds. *County Court of Ulster County v. Allen*, 442 U.S. 140, 148, 99 S.Ct. 2213, 2220, 60 L.Ed.2d 777 (1979); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). *See generally Francois v. Wainwright*, 741 F.2d 1275, 1281–82 (11th Cir.1984). We must therefore examine the Georgia Supreme Court's finding that Spencer is barred by Georgia procedural law from raising the claim he seeks to raise here to determine whether it would constitute an independent

---

**20.** The state concedes that the state law we should apply is the state law in effect at the time of trial but argues, *inter alia*, that the decision of the state courts not to address Spencer's claim on the merits should nonetheless operate to deny him any benefit to which he might otherwise be entitled under the 1967 statute. Because the state thereby argues that the deci-

sio.. of the Georgia Supreme Court not to allow Spencer the benefits of the nonwaiver provision of the 1967 statute should preclude federal review of his claim on habeas corpus, we examine that decision for its independence and adequacy in spite of the state's apparent concession that the amended statute should not have been applied.

and adequate state procedural ground for our rejection of his challenge on federal habeas.

In doing so we are guided by a series of decisions of the Supreme Court suggesting bases on which an asserted state procedural ground will not be considered independent and adequate for purposes of insulating the state court's rejection of federal claims from federal review.[21] For example, a state procedural rule that is facially valid and has been consistently followed by the state courts will not preclude review of federal claims where its application in a particular case does not satisfy constitutional requirements of due process of law. *Reece v. Georgia,* 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955).[22] Without expressly finding state procedural rules to be unconstitutional as applied, the Supreme Court has on several occasions found such rules to be inadequate to preclude federal review of constitutional claims where the procedural requirement has been novel or sporadically applied. In *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Court held that a state procedural bar, "although it may now appear in retrospect to form part of a consistent pattern of procedures to obtain appellate review," would not be considered independent and adequate where the criminal defendant "could not fairly be deemed to have been apprised of its existence. Novelty in procedural requirements cannot be permitted to thwart review in this court applied for by those who, in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights." *Id.* at 457–58, 78 S.Ct. at 1169, *quoted in NAACP v. Alabama ex rel. Flowers,* 377 U.S. 288, 301, 84 S.Ct. 1302, 1310, 12 L.Ed.2d 325 (1964) (further proceedings in same case); *Wright v. Georgia,* 373 U.S. 284, 291, 83 S.Ct. 1240, 1245, 10 L.Ed.2d 349 (1963). *See also James v. Kentucky,* 466 U.S. 341, 104 S.Ct. 1830, 1835, 80 L.Ed.2d 346 (1984) (only "firmly established and regularly followed state practice can prevent implementation of federal constitutional rights"); *Barr v. Columbia,* 378 U.S. 146, 149, 84 S.Ct. 1734, 1736, 12 L.Ed.2d 766 (1964) ("We have often pointed out that state procedural requirements which are not strictly or regularly followed cannot deprive us of the right of review.").

Contrary to the position urged by Spencer before this court, the Georgia Supreme Court's retroactive application of the 1975 amendment to the Georgia habeas statute was not novel, nor has the amended statute been only sporadically applied to cases like his. It is a dominant theme of the Supreme Court case law just described, however, that a federal habeas petitioner shall not be denied federal review of a federal constitutional claim on the basis of an asserted state procedural ground that is manifestly unfair in its treatment of that claim.[23] The element of unfair surprise

---

21. Most of the case law on which the independent and adequate state ground doctrine is based consists of decisions in direct appeals from the state courts. The principles derived from those cases, however, are as applicable on federal collateral review of a state court conviction as they are on direct appeal. *Francois v. Wainwright,* 741 F.2d 1275, 1281 (11th Cir. 1984). *See Wainwright v. Sykes,* 433 U.S. at 87, 97 S.Ct. at 2506 (citing *Henry v. Mississippi,* 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), case decided on direct appeal, in support of its finding of independent and adequate state ground).

22. In *Reece* the Supreme Court accepted the general validity of the Georgia rule requiring that challenges to the grand jury be made before indictment, but found its application to violate due process where a "semi-illiterate" defendant "of low mentality" was not provided counsel until the day after he was indicted. *Reece v. Georgia,* 350 U.S. at 89, 76 S.Ct. at 170. In a companion case to *Reece,* the Supreme Court stated that the test of due process in such a case was whether the defendant was given "a reasonable opportunity to have the issue as to the claimed right heard and determined by the state court." *Michel v. Louisiana,* 350 U.S. 91, 93, 76 S.Ct. 158, 160, 100 L.Ed. 83 (1955) (quoting *Parker v. Illinois,* 333 U.S. 571, 574, 68 S.Ct. 708, 709, 92 L.Ed. 886 (1948)).

23. Not surprisingly, in cases involving novel or unevenly applied state procedural rules, the Supreme Court has also frequently stated with apparent significance that the asserted procedural requirement would "force resort to an arid ritual of meaningless form," thus finding no legitimate state interest in the rule itself. *James v. Kentucky,* 466 U.S. 341, 104 S.Ct. 1830,

that renders novel or sporadically applied state procedural grounds inadequate to preclude federal review of federal constitutional claims is present in this case as well. The 1975 amendment, as applied in this case, operated retroactively to render Spencer's failure to raise a timely challenge to the composition of the jury array a waiver after the fact of his right to do so, affording him no opportunity to attempt to comply with the new provision before suffering the deprivation it imposed.[24] We cannot find such an interpretation of Georgia procedural law to be an independent and adequate state ground sufficient to preclude federal court consideration of the merits of Spencer's claim.[25] *Cf. Bouie v. City of Columbia*, 378 U.S. 347, 354–55, 84 S.Ct. 1697, 1703, 12 L.Ed.2d 894 (1964).

We therefore REVERSE the decision of the district court on this issue and REMAND the case to the district court for an

---

1835, 80 L.Ed.2d 346 (1984). *See also Wright v. Georgia*, 373 U.S. 284, 291, 83 S.Ct. 1240, 1245, 10 L.Ed.2d 349 (1963); *Staub v. Baxley*, 355 U.S. 313, 320, 78 S.Ct. 277, 281, 2 L.Ed.2d 302 (1958). Such is obviously not the case here. The timing rule under which the Georgia courts found Spencer's challenge to have been raised too late serves an important and legitimate state interest, when considered in the abstract. It is our view, however, that any apparent lack of a legitimate state interest in the procedural rule at issue in the independent and adequate state ground cases we have discussed was not essential to the Court's analyses and holdings in those cases. The Supreme Court itself indicated as much in *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), a case involving the constitutionality of a retroactive judicial expansion of a criminal statute. There the court referred to the cases we are principally concerned with as follows:

> The basic due process concept involved is the same as that which the Court has often applied in holding that an unforeseeable and unsupported state-court decision on a question of state procedure does not constitute an adequate ground to preclude this Court's review of a federal question. See *e.g., Wright v. Georgia*, 373 U.S. 284, 291 [83 S.Ct. 1240, 1245, 10 L.Ed.2d 349]; *N.A.A.C.P. v. Alabama*, 357 U.S. 449, 456–58 [78 S.Ct. 1163, 1168–69, 2 L.Ed.2d 1488]; *Barr v. City of Columbia*, ante, [378 U.S.] p. 146 [84 S.Ct. 1734, 12 L.Ed.2d 766]. The standards of state decisional consistency applicable in judging the adequacy of a state ground are also applicable, we think, in determining whether a state court's construction of a criminal statute was so unforeseeable as to deprive the defendant of the fair warning to which the Constitution entitles him. In both situations, "a federal right turns upon the status of state law as of a given moment in the past—or, more exactly, the appearance to the individual of the status of state law as of that moment...." 109 U.Pa.L.Rev. *supra*, at 74, n. 34. When a state court overrules a consistent line of procedural decisions with the retroactive effect of denying a litigant a hearing in a pending case, it thereby deprives him of due process of law "in its primary sense of an opportunity to be heard and to defend [his] substantive right."

*Brinkerhoff-Faris Trust & Sav. Co. v. Hill*, 281 U.S. 673, 678 [50 S.Ct. 451, 453, 74 L.Ed. 1107]. When a similarly unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime. Applicable to either situation is this Court's statement in *Brinkerhoff-Faris, supra*, that "if the result above stated were attained by an exercise of the State's legislative power, the transgression of the due process clause of the Fourteenth Amendment would be obvious," and "The violation is none the less clear when that result is accomplished by the state judiciary in the course of construing an otherwise valid ... state statute." *Id.*, at 679–80 [50 S.Ct. at 453–54].

*Id.* at 354–55, 84 S.Ct. at 1703.

**24.** We mean to suggest no view in this opinion concerning the applicability of the amended statute to a petitioner, convicted while the 1967 statute was in effect, whose failure to challenge the composition of his grand or traverse jury continued long past his trial or well beyond the enactment of the 1975 amendment. A voluntary and intelligent waiver of such a claim in accordance with the terms of the 1967 statute may be found under a wide variety of circumstances, and we do not with this decision intend to limit or restrict the ability of the courts of this Circuit to find such a waiver in future cases involving the 1967 Georgia habeas corpus statute.

**25.** No voluntary, knowing and intelligent waiver by Spencer of his right to raise the jury composition challenge he seeks to raise now appears in the record in this case. Thus the findings of the Georgia Supreme Court that Spencer's claim was barred not only because it was untimely, but also because it "was not supported by evidence in the trial court, was waived before the trial began, and was not urged on direct appeal," *Spencer v. Hopper*, 255 S.E.2d at 4, also cannot be considered sufficient to bar review of his claim on federal habeas.

**1472**

evidentiary hearing on the merits of Spencer's challenge to the composition of the array from which his petit jury was chosen.

TJOFLAT, Circuit Judge, specially concurring, in which HATCHETT and CLARK, Circuit Judges, join:

I concur in Part I of the majority's opinion and in its decision to adhere to the panel's treatment of issues one, three, and four, *see ante* at 1460. For the reasons expressed below, I agree with the result reached in Part II of the majority's opinion, that the petitioner is entitled to present to the district court his challenge to the constitutionality of the jury selection process utilized in his trial.

The record in this case indicates that, on January 7, 1975, prior to the commencement of voir dire, petitioner presented the trial judge with a written petition informing the court that the State was about to impanel a jury drawn from an array from which blacks were systematically excluded, in violation of the United States Constitution. Admittedly, petitioner's challenge was in the form of a removal petition addressed to the federal district court. The unconstitutionality of the jury selection process, however, was cited as the grounds for removal, fully apprising the trial judge of the petitioner's contention that the State was about to violate his constitutional rights. Rather than address, or even explore, the merits of petitioner's objection, the trial court merely determined that it retained jurisdiction over the case, because the federal district court had not received the removal petition, and proceeded tentatively to qualify nineteen jurors by the end of the day.

Before the commencement of proceedings the next day, petitioner again directed the trial judge's attention to his claim that the State's jury selection process violated the Constitution. This time, his claim was presented in the context of a formal motion, accompanied by a brief, challenging the jury array.[1] Once again, the trial judge declined to address the merits of petitioner's contention, ruling that the motion was not timely. Following his conviction, petitioner sought to raise his jury challenge before the state habeas court. The Georgia Supreme Court affirmed the state habeas court's refusal to address the merits of petitioner's claim because it had not been timely asserted in the trial court. *Spencer v. Hopper,* 243 Ga. 532, 255 S.E.2d 1, *cert. denied,* 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979). Petitioner then brought this petition seeking a writ of habeas corpus.

There is no question that the district court had the power to entertain the petition in a case such as this. *See Francis v. Henderson,* 425 U.S. 536, 538, 96 S.Ct. 1708, 1710, 48 L.Ed.2d 149 (1976). However, because of the valid and important policy considerations involving comity and the orderly administration of justice which are delineated in *Wainwright v. Sykes,* 433 U.S. 72, 88–90, 97 S.Ct. 2497, 2507–08, 53 L.Ed.2d 594 (1977) and *Francis v. Henderson,* 425 U.S. at 539–42, 96 S.Ct. at 1710–11, federal courts frequently must enforce a state's contemporaneous objection rule and decline to exercise their power to entertain an application for a writ of habeas corpus. A careful reading of *Sykes* and *Francis* discloses two important goals served by state contemporaneous objection rules.[2] First, such rules allow the trial judge to correct possible errors in the most timely and efficient fashion, when the evidence is the freshest. In a case such as this, where the objection must be made at the outset of the proceedings, an error can be remedied prior to incurring the burden and expense of trial and before jeopardy attaches. Considerations of comity are

1. Given the trial judge's treatment of his removal petition, petitioner's formal motion was made as soon as could possibly have been expected under the circumstances.

2. The Georgia courts have expressed these same two considerations as underlying their contemporaneous objection rule. *See Young v. State,* 232 Ga. 285, 206 S.E.2d 439, 442 (1974); *Williams v. State,* 210 Ga. 665, 82 S.E.2d 217, 219–20 (1954), *remanded sub nom. Williams v. Georgia,* 349 U.S. 375, 75 S.Ct. 814, 99 L.Ed. 1161 (1955); *Williams v. State,* 31 Ga.App. 173, 120 S.E. 131, 132 (1923).

also promoted in this manner. Second, contemporaneous objection rules prevent a defendant from "sandbagging," taking a chance on a jury verdict while reserving his claim in the event of an unfavorable verdict. These important considerations mandate that a federal court decline to entertain a claim where the petitioner failed seasonably to present it to the trial court, unless the petitioner can show cause for not raising the claim earlier and resulting prejudice.

In this instance, petitioner made the trial court aware of his objection to the jury array at the outset of the proceedings. He raised the matter prior to the commencement of voir dire [3] and again in a formal motion at a time when all that had occurred was the tentative qualification of some of the jurors.[4] All of the policy considerations in favor of a contemporaneous objec-

tion rule were fully vindicated. The trial judge had the opportunity to correct the alleged error before any of the burdens or expenses of trial were incurred, prior to the attachment of jeopardy, while the issue was fresh, and at the time when it would be least disruptive to the administration of justice. It is not even arguable that petitioner was attempting to sandbag the State. Because the issue was seasonably and squarely presented to the trial court, the state contemporaneous objection rule cannot operate to bar habeas review of petitioner's claim. *See St. John v. Estelle*, 563 F.2d 168, 172 (5th Cir.1977) (en banc) (Tjoflat, J., dissenting), *cert. denied*, 436 U.S. 914, 98 S.Ct. 2255, 56 L.Ed.2d 415 (1978).[5]

Federal courts enforce state contemporaneous objection rules because such rules serve important and legitimate interests.

**3.** Curiously, none of the courts that have considered petitioner's claim have come to grips with the effect of his January 7 "removal petition" in light of the purposes of the contemporaneous objection rule. The majority opinion, *ante* p. 1465 n. 11, and the panel opinion, 715 F.2d at 1571 n. 8, expressly decline to address the issue of the January 7 petition. The state trial court made no response to the removal petition other than to conclude that it did not affect the court's jurisdiction. The state habeas court "found" that petitioner's motion to challenge the jury was in fact filed on January 8, but did not address the effect of the January 7 petition. *See Spencer v. Hopper*, 243 Ga. 532, 255 S.E.2d 1, 3, *cert. denied*, 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979). The Georgia Supreme Court agreed with the state habeas court and also did not address the January 7 petition. *Id.* The implication that may be drawn is that the Georgia courts did not find the January 7 petition legally sufficient to satisfy the contemporaneous objection rule, but no discussion of this point appears.

**4.** The majority opinion determines that it has "long been the law in Georgia" that a constitutional challenge to the composition of the jury array must be made prior to the time voir dire commences. *Ante* p. 1464. The panel opinion concluded that, prior to this case, the precise time such a challenge must be raised has not been clear as a matter of Georgia law. 715 F.2d at 1569–73. I would submit that the panel's conclusion is a more accurate summation of Georgia law.

It is undisputed that Georgia law requires a challenge to the jury array be made prior to the time a jury is "put upon" a defendant. It is also

undisputed that a challenge made for the first time after a jury verdict, in a motion for a new trial or in the habeas context, is not timely. However, it has not been clear when the process of putting the jury on the defendant begins and when the process ends. There are Georgia cases indicating that a jury is "put upon" a defendant prior to the commencement of voir dire, *e.g., Britten v. State*, 221 Ga. 97, 143 S.E.2d 176, 178 (1965), *cert. denied*, 384 U.S. 1014, 86 S.Ct. 1944, 16 L.Ed.2d 1035 (1966); *Felker v. Johnson*, 53 Ga.App. 390, 186 S.E. 144, 146 (1936), as well as cases indicating that voir dire is included within the process of putting a jury on a defendant, *e.g., Walls v. State*, 161 Ga.App. 235, 291 S.E.2d 15, 17–18 (1982); *see Pulliam v. Balkcom*, 245 Ga. 99, 263 S.E.2d 123, 126–27, *cert. denied*, 447 U.S. 927, 100 S.Ct. 3023, 65 L.Ed.2d 1121 (1980) (must show cause for failure to challenge jury composition *at or before* trial). I have found no Georgia case where a jury challenge was raised for the first time in the early stages of voir dire and was held to be untimely. Even if the majority's interpretation of Georgia law is correct, however, it is clear that the trial judge was made aware of petitioner's objection prior to the commencement of voir dire.

**5.** After jury qualification was completed in petitioner's trial, the judge asked the prosecutor whether the State was ready to proceed. The prosecutor responded that it was, but would argue the merits of petitioner's jury challenge if petitioner insisted on the motion. This indicates that, at that time, the prosecutor believed the contemporaneous objection requirement had been satisfied or, at a minimum, the State was not insisting upon compliance with it.

Where those interests have been fully vindicated, as in this case, enforcement of the state's procedural bar would be "giving effect to the contemporaneous-objection rule for its own sake" and would be to " 'resort to an arid ritual of meaningless form.' " *Henry v. Mississippi*, 379 U.S. 443, 449, 85 S.Ct. 564, 568, 13 L.Ed.2d 408 (1965) (quoting *Staub v. City of Baxley*, 355 U.S. 313, 320, 78 S.Ct. 277, 281, 2 L.Ed.2d 302 (1958)). I would therefore hold that, because petitioner presented his objection seasonably to the trial judge, he is entitled to federal habeas review of his claim.

JOHNSON, Circuit Judge, concurring in part and dissenting in part:

In Part II of the majority opinion after many expressions and observations not involved in this case and therefore not necessary for determining the issue under consideration (See Section C. *Analysis*), this Court holds that petitioner Spencer is not procedurally barred from presenting his jury composition challenge to the federal district court. With respect to Part II, as Judge Warren Jones stated in concurring in an opinion written by Judge John R. Brown in *Wirtz v. Fowler*, 372 F.2d 315 (5th Cir.1966), "I concur in the result and in so much of the opinion as supports the result." *Id.* at 335 (Jones, J., concurring).

I dissent from Part I of the majority opinion, in which the majority holds that Spencer's proffer of the study conducted by Dr. David Baldus did not entitle him to an evidentiary hearing because the facts allegedly proven by the study are legally insufficient to support an Eighth or Fourteenth Amendment challenge to the Georgia capital sentencing system. The petitioner did not have to prove purposeful discrimination against him in sentencing in order to support his claim; even if he were required to do so, he would still almost certainly succeed. In my view, the evidence proffered by Spencer would establish grounds for relief under the Eighth Amendment because it would prove that Georgia has applied its death penalty statute in an arbitrary and capricious manner by allowing race to determine in part who will receive the death penalty.

A petitioner can prove that a state has operated its death penalty system arbitrarily and capriciously without proving that a state agent intended to discriminate against the petitioner or against any other defendant in a capital case. A death penalty system is arbitrary and capricious if it produces significantly inconsistent results, regardless of the intent of state agents. *See Godfrey v. Georgia*, 446 U.S. 420, 433, 100 S.Ct. 1759, 1767, 64 L.Ed.2d 398 (1980) (death penalty scheme must provide meaningful way of distinguishing between those who receive death sentence and those who do not); *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) (comparative proportionality review not required if system adequately ensures consistent and rational results).

The reason that an Eighth Amendment claim based on racial discrimination cannot require proof of discriminatory intent is that the death penalty heightens the need for consistent and fair decisions while at the same time maintaining the need for the discretion to make individualized judgments. An appellate court can only give searching review to the fairness and consistency of a discretionary decision if it employs effects evidence, since the discretion of state decisionmakers makes evidence of their intent difficult if not impossible to obtain. *McCleskey v. Kemp*, 753 F.2d 877, 909 (11th Cir.1985) (Johnson, J., dissenting). Since the special nature of the death penalty calls for the use of effects evidence, the evidence proffered by Spencer had only to show by a preponderance of the evidence a significant racial influence on the pattern of death sentences; his evidence did not have to compel an inference of purposeful discrimination. The Baldus Study could succeed under this standard and the district court erred in refusing to hold a hearing.

Even if proof of purposeful discrimination were the appropriate standard, the Baldus Study proffered by Spencer would suffice to support his constitutional claim.

In some instances, circumstantial or statistical evidence of racially disproportionate impact may be so strong that it compels an inference of purposeful racial discrimination. *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *Smith v. Balkcom*, 671 F.2d 858, 859 (5th Cir. Unit B), *cert. denied*, 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982). The Baldus Study begins with evidence of a very large disproportionate impact by showing that the death penalty falls on killers of white victims eleven times more often than on killers of black victims. Then, moving beyond the usual confines of statistical evidence, the study analyzes that disproportionate impact to show that it is strong, virtually irrefutable evidence of purposeful discrimination. The multivariate regression analysis demonstrates that the average killer of a white victim has a significantly greater risk of receiving the death penalty than does the killer of a non-white victim and that the greater risk exists solely because of the race of the victim. Spencer has therefore produced strong evidence of a disproportionate impact sufficiently large to compel an inference of purposeful discrimination.

While this Court has determined, wrongly in my view, the legal significance of the Baldus Study, the issue remains alive because the Supreme Court could take action in *McCleskey v. Kemp, supra.* The shortcomings of this Court's decision in *McCleskey*, together with the possibility that it may not stand as binding precedent on the issue, lead me to conclude that the evidence proffered by Spencer would entitle him to habeas corpus relief. I would reverse the judgment of the district court and order it to hold an evidentiary hearing.